UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| U.S. ENERCORP, LTD., | § | |
|     Plaintiff, | § | |
| vs. | § | |
| SDC MONTANA BAKKEN | § | |
| EXPLORATION, LLC, VAL VERDE | § | |
| INVESTMENTS, LLC, and RINGO | § | |
| SHAPIRO, | § | |
|     Defendants. | § | |
| | § | |
| SDC MONTANA BAKKEN | § | |
| EXPLORATION, LLC, VAL VERDE | § | |
| INVESTMENTS, LLC, and RINGO | § | |
| SHAPIRO, | § | |
|     Counter-Plaintiff, | § | No. SA:12-CV-1231-DAE |
| v. | § | |
| U.S. ENERCORP, LTD, | § | |
|     Counter-Defendant. | § | |
| | § | |
| SDC MONTANA BAKKEN | § | |
| EXPLORATION, LLC, VAL VERDE | § | |
| INVESTMENTS, LLC, and RINGO | § | |
| SHAPIRO, | § | |
|     Plaintiff, | § | |
| v. | § | |
| BRUCE GATES, JACK GUNTHER, | § | |
| CHRISTOPHER DEDMON; SDC | § | |
| MONTANA CONSULTING, LLC, | § | |
| SDC MONTANA, LLC | § | |
|     Third-Party Defendant. | § | |

ORDER (1) GRANTING ENERCORP'S MOTION TO DISMISS; (2)
GRANTING BRUCE GATES' MOTION TO DISMISS; AND (3) GRANTING
JACK GUNTHER'S MOTION TO DISMISS

U.S. Enercorp ("Enercorp") initially filed suit in state court ("the

Enercorp Complaint") against SDC Montana Bakken Exploration, LLC; Val Verde

Investments, LLC, and Ringo Shapiro (collectively, "Bakken").  (Dkt. # 1.)

Bakken removed the case to federal court on December 31, 2012.  (Id.)  On

February 11, 2013, Bakken filed a motion to dismiss the Enercorp Complaint.

(Dkt. # 16.)  After the parties submitted responses and replies, the Court heard

argument on the motion to dismiss, granted the motion in part, denied the motion

in part, and granted Enercorp leave to amend.  (Dkt. # 37.)

Shortly thereafter, Bakken filed a third-party complaint against Bruce

Gates ("Gates"), Jack Gunther ("Gunther"), Christopher Dedmon ("Dedmon"),

SDC Montana Consulting, LLC, and SDC Montana, LLC and also asserted

counter-claims against Enercorp ("the Bakken Complaint").  (("Compl.," Dkt.

# 40.)  The pending motions from Enercorp, Gates, and Gunther each move to

dismiss the sixth cause of action in the Bakken Complaint—Civil Conspiracy to

Commit Fraud.  (Dkt. ## 44, 46, 48.)  Bakken did not respond to these motions to

dismiss and stated in their ADR report that they "[have] not filed an opposition to

the [motions] and [do] not intend to do so.  We then anticipate that Mr. Gunther

will be dismissed from the case and that the Sixth Cause of Action will be

2

dismissed against U.S. Enercorp and Mr. Gates as well." (Dkt. # 62 at 3.) Based on these statements and Bakken's lack of response, Enercorp, Gunther, and Gates filed an Advisory to the Court seeking to cancel the hearing on the motions to dismiss set for Monday, March 17, 2014 stating it would be a waste of the parties' and Court's time and resources. (Dkt. # 75.) The Court agrees and finds this matter suitable for disposition without a hearing pursuant to Local Rule 7(h).

<u>BACKGROUND</u>

For the purposes of the pending motions to dismiss, the following facts are taken as true from the Bakken Complaint.[1] The Bakken Complaint alleges that Enercorp, Gunther, and Gates engaged "in a pattern of wrongful behavior designed to deprive Shapiro of the fruit of his labor and investments and to drive him into economic duress. (Compl. ¶ 21.) Accordingly, Shapiro alleges that a broker approached him to secure bridge financing to facilitate a transaction between SDC Montana Consulting, LLC and SDC Montana, LLC, controlled by Christopher Dedmon (collectively, "SDC Montana") and Enercorp and JL Resources (collectively, "the Drillers"). (<u>Id.</u> ¶¶ 24–27.) The transaction involved SDC Montana transferring specific mineral leases at a specific price in an area of

---

[1] As a note, the Enercorp Complaint alleges a very different set of circumstances. However, in determining whether the Bakken Complaint can survive a motion to dismiss, the well-pleaded facts in the Bakken Complaint are taken as true.

Montana, known as the Bakken Play, to Dedmon, who would ultimately transfer the oil and gas rights to Enercorp pursuant to an Acquisition Agreement. (Id.)

The Bakken Complaint states that SDC Montana required bridge financing because the cost of leasing the mineral acres had increased significantly since it entered into the contract with Dedmon. (Id. ¶ 28.) Dedmon represented that once SDC Montana acquired the relevant leases, Enercorp had an obligation to purchase them at $750 per acre and that Shapiro would be repaid. (Dkt. # 29.)

Shapiro initially loaned SDC Montana $200,000.00, collateralizing the entire asset base, and provided assistance with the SDC Montana operation as a whole. (Id. ¶ 30.) In exchange, SDC Montana signed a personal guarantee, a note and a security agreement. (Id. ¶ 31.)

The Bakken Complaint alleges that Shapiro and SDC Montana executed "Facility Agreement," because it became apparent that more flexibility was necessary in the lending instrument, and a Consulting Agreement. (Id. ¶¶ 33–34.) Shapiro maintains that he continued to fund leases and loaned additional sums and that SDC Montana referred to him as the financial arm of SDC Montana during its business dealings. (Id. ¶¶ 34, 35.) Shapiro states that the Drillers had known all along that he was financing SDC Montana and raised no objections. (Id. ¶ 42.)

4

Shapiro claims that as he began unraveling the "accounting mess" SDC Montana had created he encountered "conflicting reports, and incomplete account and record keeping materials."  (Id. ¶ 37.)  According to the Bakken Complaint, SDC Montana misrepresented themselves in leases prior to and during Shapiro's involvement.  (Id. ¶ 38.)  The Bakken Complaint alleges that SDC Montana improperly used the funds originally from Enercorp to fund leases outside of the buy areas outlined in the contracts.  (Id. ¶ 39.)  After learning of these practices, Shapiro stopped funding the Facility Agreement.  (Id. ¶ 40.)

Shapiro subsequently learned that there were additional contracts between the Drillers and SDC Montana and that Enercorp and Gates owned portions of SDC Montana.  (Id. ¶¶ 43–44.)  Shapiro claims he made his concerns known to the Drillers, but the Drillers "offered no intention of performing on their contracts with SDC at any level."  (Id. ¶ 45.)

Subsequently, all the parties, led by Shapiro, met to clear up the issues.  (Id. ¶ 46.)  Shapiro states that a copy of the Facility Agreement was then provided to Gates, even though "SDC [Montana] had already clarified the extent of its relationship with Shapiro earlier."  (Id. ¶ 47.)  Shapiro then met with Bruce Gates "to get [himself] out of the deal entirely."  Shapiro states that Bruce Gates then agreed to fund SDC Montana's "loan amount plus the interest and fees owed

to Shapiro at that time in exchange for an assignment of the collateral obtained through his agreements with [SDC Montana]."  (Id. ¶ 49.)

Shapiro alleges that Bruce Gates never performed, forcing him to "foreclose on the assets and look to other means to recoup this defaulted loan." (Id. ¶ 52.)  Shapiro argues he was left with only disadvantageous choices, the best of which was to work with the Drillers to sell the relevant land to a third party.  (Id. ¶¶ 53–55.)  Shapiro alleges that the Drillers' actions forced him to go along with this plan.  (Id. ¶ 58.)

Southwestern Energy Production Company ("SEPCO") became interested in the land.  (Id. ¶ 60.)  Shapiro states that Enercorp said that SEPCO would only deal with Enercorp in the ensuing negotiations because of Dedmon's "checkered past."  (Id. ¶¶ 62–63.)  Shapiro alleges Bruce Gates used this as an excuse to "hijack" the process and that he only agreed to the Collaboration Agreement in an effort to sell the land quickly.  (Id. ¶¶ 63–64.)  Shapiro claims he was forced to make major concessions on price and participation in order to expedite the negotiations.  (Id. ¶ 65.)  Moreover, Shapiro states he only agreed to these conditions because Enercorp and Gates assured him that he would get paid according to the terms of the Collaboration Agreement.  (Id.)  Shapiro maintains that SEPCO declared the deal a success, but claims that Enercorp distributed the ensuing initial option payment of approximately $1,600,000 to him without a

6

proper accounting.  (Id. ¶¶ 69–70.)  Then, as the remaining land was leased,

SEPCO paid Enercorp, but Enercorp never paid Shapiro his share.  (Id. ¶¶ 71, 73.)

Similarly, Shapiro maintains that Enercorp never provided the assignment relating

to the overrides that he was owed.  (Id. ¶ 74.)  Shapiro alleges that Enercorp has

not only breached the Collaboration Agreement, but also that Enercorp never

intended to comply with it in the first place.  (Id. ¶¶ 75–76.)  Additionally, Shapiro

claims that Gates, Turner, and Guenther conspired together to defraud Shapiro by

withholding money due under the Collaboration Agreement and providing him

with false information.  (Id. ¶ 77.)

## LEGAL STANDARD

A proper pleading under the Federal Rules of Civil Procedure must

contain a "short and plain statement of the claim showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8

announces does not require 'detailed factual allegations,' but it demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation."  Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must contain more than

mere "labels and conclusions" or "a formulaic recitation of the elements of a cause

of action."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S.

at 555).

In reviewing a motion to dismiss, the Court accepts as true all of the well-pleaded factual allegations in the complaint.  See id. at 678.

In order to survive a motion to dismiss, a claim must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 547.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 677.

In adjudicating a motion to dismiss, the Court considers only the pleadings and those matters of which it may take judicial notice under Rule 201 of the Federal Rules of Evidence.  Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1018–19 (5th Cir. 1996) (adopting a rule that a court in a securities fraud action may take judicial notice of relevant public disclosure documents required to be filed with the SEC); Hurd v. BAC Home Loans Servicing, LP, 880 F.Supp. 2d 747, 758 (N.D. Tex. 2012) (taking judicial notice of matters of public record and considering documents attached to a motion to dismiss as part of the pleadings because they were central to the claims in the complaint).

Additionally, when a party alleges fraud, the complaint must meet the heightened pleading standards set forth in Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that a party pleading fraud or mistake "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

8

DISCUSSION

I.     Local Rule CV-7(e)(2)

        The Court first notes that pursuant to Local Rule 7(e)(2), "[i]f there is
no response filed within the time period prescribed by this rule, the court may grant
the motion as unopposed."  W.D. Tex. Civ. R. 7(e)(2).  Plaintiffs never filed a
Response, let alone within the fourteen days permitted by the local rule.
Nonetheless, the Court will independently examine the merits of Defendant's
Motion to Dismiss.

II.    Motions to Dismiss

        Enercorp, Gates, and Gunther have moved to dismiss the sixth cause
of action in the Shapiro Complaint—Civil Conspiracy to Commit Fraud.  (Dkt.
## 44, 46, 48.)  A pleading alleging civil conspiracy to commit fraud must meet the
heightened pleading standard of Federal Rule of Civil Procedure 9(b).  Castillo v.
First City Bancorporation of Texas, Inc., 43 F.3d 953, 961 (5th Cir. 1994).

        The Bakken Complaint alleges that (1) Enercorp, Gates, Turner, and
Gunther "formed a conspiracy to defraud Shapiro from monies owed to him under
the Collaboration Agreement;" (2) Enercorp, Gates, Turner, and Gunther "meet on
a monthly basis to discuss the business of [Enercorp]"; (3) Enercorp, Gates,
Turner, and Gunther "conspired to provide materially false information to Shapiro
with the intent that Shapiro [would] be deceived about the amount of money owed

9

to him;" (4) "materially false information [was] given to Shapiro to induce Shapiro to believe that Shapiro is owed less money than he actually is;" (5) Enercorp, Gates, Turner, and Gunther knew of the conspiracy and participated in it; (6) Enercorp and Gates then communicated the information to Shapiro in furtherance of the conspiracy knowing it was false or with reckless disregard for its veracity; and (7) Enercorp and Gates intended Shapiro to rely on it, and Shapiro did rely on it, and was damaged.  (Compl. ¶¶ 141–150.)

"[A] plaintiff alleging a conspiracy to commit fraud must plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy." Davis v. Karl, No. 10–875, 2010 WL 3312587, at *3 (E.D. La. Aug. 19, 2010); Sullivan v. Leor Energy, LLC, 600 F.3d 542, 550–551 (5th Cir. 2010) (applying the heightened pleading requirements of Rule 9(b) to state law claims for fraud). "To establish a civil conspiracy to commit fraud, [a party] must establish (1) a combination of two or more persons; (2) seeking to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) having a meeting of minds on the object or course of action; (4) who commit one or more unlawful, overt acts; (5) proximately resulting in damages." Van Duzer v. U.S. Bank Nat. Ass'n, ---F. Supp. 2d ----, 2014 WL 357878, at *15 (S.D. Tex. Jan. 31, 2014); P. McGregor Enterprises, Inc. v. Hicks Const. Group, LLC, 420 S.W.3d 45, 52 (Tex. App. 2012) ("A conspiracy to defraud on the part of two or more persons means a common

10

purpose, supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and each has the understanding that the other has that purpose." (internal quotation marks omitted)).

The Bakken Complaint does not meet the heightened pleading standards required by Rule 9(b).  First, the Bakken Complaint alleges that the monthly meetings of Enercorp, Gates, Turner, and Gunther to discuss Enercorp's business was an overt act in furtherance of the conspiracy.  (Compl. ¶ 143.)  It is unclear how Enercorp could attend the meeting owing to the fact it is a legal entity; nonetheless, the fact these individuals met to discuss Enercorp's business does not support a claim for conspiracy to commit fraud.  Rather, the allegation indicates that these meetings were, in fact, business meetings.  The Bakken Complaint does not plead any facts supporting a conspiracy to commit an unlawful act or a meeting of the minds on the object of the conspiracy or course of action.

Second, the Bakken Complaint alleges that Enercorp, Gates, Turner, and Gunther conspired to provide Shapiro with material information they knew to be false (or recklessly disregarded the possibility it was false) with the intention that he rely on it.  (Id. ¶¶ 144–45.)  This claim fails to satisfy the heightened pleading requirements of Rule 9(b).  The Bakken Complaint's allegation is disturbingly vague—he only claims that Enercorp, Gates, Turner, and Gunther provided "materially false information" that induced Shapiro to believe he was

11

owed less money.  (<u>Id.</u> ¶ 145.)  The Bakken Complaint makes no mention of the type of information this was, what form he received it in, or even who specifically provided it to him.

The Bakken Complaint fails to plead the required elements of civil conspiracy to commit fraud with sufficient particularity under Rule 9(b) to withstand a motion to dismiss.  The Bakken Complaint lacks any facts supporting a meeting of the minds and does not plead with particularity any overt act taken in furtherance of the alleged conspiracy.  Therefore, the Court **GRANTS** the Motions to Dismiss (Dkt. ## 44, 46, 48).

<u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** Enercorp's Motion to Dismiss the Sixth Cause of Action for Civil Conspiracy to Commit Fraud (Dkt. # 44), **GRANTS** Gates' Motion to Dismiss the Sixth Cause of Action for Civil Conspiracy to Commit Fraud (Dkt. # 46), and **GRANTS** Gunther's Motion to Dismiss the Sixth Cause of Action for Civil Conspiracy to Commit Fraud (Dkt. # 48).

IT IS SO ORDERED.

DATED: San Antonio, Texas, April 15, 2014.

_____
David Alan Ezra
Senior United States Distict Judge