UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| U.S. ENERCORP, LTD., | § | |
|     Plaintiff, | § | |
| vs. | § | |
| SDC MONTANA BAKKEN | § | |
| EXPLORATION, LLC, VAL VERDE | § | |
| INVESTMENTS, LLC, and RINGO | § | |
| SHAPIRO, | § | |
|     Defendants. | § | |
| | § | |
| SDC MONTANA BAKKEN | § | |
| EXPLORATION, LLC, VAL VERDE | § | |
| INVESTMENTS, LLC, and RINGO | § | |
| SHAPIRO, | § | |
|     Counter-Plaintiff, | § | No. SA:12-CV-1231-DAE |
| v. | § | |
| U.S. ENERCORP, LTD, | § | |
|     Counter-Defendant. | § | |
| | § | |
| SDC MONTANA BAKKEN | § | |
| EXPLORATION, LLC, VAL VERDE | § | |
| INVESTMENTS, LLC, and RINGO | § | |
| SHAPIRO, | § | |
|     Plaintiff, | § | |
| v. | § | |
| BRUCE GATES, JACK GUNTHER, | § | |
| CHRISTOPHER DEDMON; SDC | § | |
| MONTANA CONSULTING, LLC, | § | |
| SDC MONTANA, LLC | § | |
|     Third-Party Defendant. | § | |

ORDER (1) DENYING MOTION FOR ENTRY OF DEFAULT AGAINST
CHRISTOPHER DEDMON, SDC MONTANA, LLC AND SDC MONTANA
CONSULTING, LLC; (2) DENYING IN PART AND GRANTING IN PART
MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND IN
THE ALTERNATIVE, FAILURE TO STATE A CLAIM; AND (3) GRANTING
SHAPIRO'S MOTION TO AMEND

On July 2, 2014, the Court heard argument on Third-Party Plaintiffs

SDC Montana Bakken Exploration, LLC, Val Verde Investments, LLC, and Ringo

Shapiro's (collectively, "Shapiro") Motion for Entry of Default (Dkt. # 55).  At the

hearing, the Court also heard argument on Third-Party Defendants Christopher

Dedmon, SDC Montana Consulting, LLC, and SDC Montana, LLC's (collectively,

the "Dedmon Entities") Motion to Dismiss the Third-Party Complaint filed against

them for insufficient service of process and failure to state a claim (Dkt. # 65).   At

the hearing, Shapiro moved to amend his complaint (the "Shapiro Complaint")

(Dkt. # 40).  Olivier Taillieu, Esq., appeared on behalf of Shapiro, and Dan

Lanfear, Esq., represented the Dedmon Entities.  Amy Davis, Esq., representing

Enercorp, also was present at the hearing. After careful consideration of the

arguments at the hearing and those presented in the memoranda in support of and

in opposition to the motions, the Court **DENIES** Shapiro's Motion for Default

(Dkt. # 55); **DENIES IN PART AS MOOT AND GRANTS IN PART** the

Dedmon Entities' Motion to Dismiss; and **GRANTS** Shapiro's Motion to Amend.

2

BACKGROUND

For the purposes of the pending motions to dismiss, the following facts are taken as true from the Shapiro Complaint.[1]  The Shapiro Complaint states that a transaction was agreed to between SDC Montana Consulting, LLC and SDC Montana, LLC (collectively, "SDC Montana") controlled by Christopher Dedmon and  U.S. Enercorp ("Enercorp") and JL Resources (collectively, "the Drillers"). ("Compl.," Dkt. # 40 ¶¶ 24–27.)  The transaction involved SDC Montana transferring specific mineral leases at a specific price in an area of Montana, known as the Shapiro Play, to Dedmon, who would ultimately transfer the oil and gas rights to Enercorp pursuant to an Acquisition Agreement.  (Id.)

SDC Montana required bridge financing because the cost of leasing the mineral acres had increased significantly since it entered into the contract with Dedmon.  (Id. ¶ 28.)  A broker approached Shapiro to secure bridge financing to facilitate the transaction.  (Id. ¶¶ 24–27.)  Dedmon represented to Shapiro that once SDC Montana acquired the relevant leases, Enercorp had an obligation to purchase them at $750 per acre and that Shapiro would be repaid.  (Dkt. # 29.)

Shapiro initially loaned SDC Montana $200,000.00, collateralizing the entire asset base, and provided assistance with the SDC Montana operation as a

---

[1] As a note, the Enercorp Complaint alleges a very different set of circumstances. However, in determining whether the Shapiro Complaint can survive a motion to dismiss, the well-pleaded facts in the Shapiro Complaint are taken as true.

whole.  (Id. ¶ 30.)  In exchange, SDC Montana signed a personal guarantee, a note and a security agreement.  (Id. ¶ 31.)

Shapiro and SDC Montana then executed a "Facility Agreement," because more flexibility was necessary in the lending instrument, and a Consulting Agreement. (Id. ¶¶ 33–34.)  Shapiro maintains that after this transaction he continued to fund leases and loaned additional sums and that SDC Montana referred to him as the financial arm of SDC Montana during its business dealings. (Id. ¶¶ 34, 35.)  Shapiro states that the Drillers knew that he was financing SDC Montana and raised no objections.  (Id. ¶ 42.)

Shapiro claims that as he began unraveling the "accounting mess" SDC Montana had created, he encountered "conflicting reports, and incomplete account and record keeping materials."  (Id. ¶ 37.)  According to the Shapiro Complaint, SDC Montana misrepresented themselves in leases prior to and during Shapiro's involvement.  (Id. ¶ 38.)  The Shapiro Complaint alleges that SDC Montana improperly used the funds originally from Enercorp to fund leases outside of the buy areas outlined in the contracts.  (Id. ¶ 39.)  After learning of these practices, Shapiro stopped funding the Facility Agreement.  (Id. ¶ 40.)

Shapiro subsequently learned that there were additional contracts between the Drillers and SDC Montana and that Enercorp and that Gates owned portions of SDC Montana.  (Id. ¶¶ 43–44.)  Shapiro claims he made his concerns

4

known to the Drillers, but the Drillers "offered no intention of performing on their contracts with SDC at any level."  (Id. ¶ 45.)

Subsequently, all the parties, led by Shapiro, met to clear up the issues.  (Id. ¶ 46.)  Shapiro states that a copy of the Facility Agreement was then provided to Gates, even though "SDC [Montana] had already clarified the extent of its relationship with Shapiro earlier."  (Id. ¶ 47.)  Shapiro then met with Bruce Gates "to get [himself] out of the deal entirely."  Shapiro states that Bruce Gates then agreed to fund SDC Montana's "loan amount plus the interest and fees owed to Shapiro at that time in exchange for an assignment of the collateral obtained through his agreements with [SDC Montana]."  (Id. ¶ 49.)

Shapiro alleges that Bruce Gates never performed, forcing him to "foreclose on the assets and look to other means to recoup this defaulted loan." (Id. ¶ 52.)  Shapiro argues he was left with only disadvantageous choices, the best of which was to work with the Drillers to sell the relevant land to a third party.  (Id. ¶¶ 53–55.)  Shapiro alleges that the Drillers' actions forced him to go along with this plan.  (Id. ¶ 58.)

Southwestern Energy Production Company ("SEPCO") became interested in the land.  (Id. ¶ 60.)  Shapiro states that Enercorp said that SEPCO would only deal with Enercorp in the ensuing negotiations because of Dedmon's "checkered past."  (Id. ¶¶ 62–63.)  Shapiro alleges Bruce Gates used this as an

excuse to "hijack" the process and that he only agreed to the Collaboration

Agreement in an effort to sell the land quickly.  (Id. ¶¶ 63–64.)  Shapiro claims he

was forced to make major concessions on price and participation in order to

expedite the negotiations.  (Id. ¶ 65.)  Moreover, Shapiro states he only agreed to

these conditions because Enercorp and Gates assured him that he would get paid

according to the terms of the Collaboration Agreement.  (Id.)  Shapiro maintains

that SEPCO declared the deal a success, but claims that Enercorp distributed the

ensuing initial option payment of approximately $1,600,000 to him without a

proper accounting.  (Id. ¶¶ 69–70.)  Then, as the remaining land was leased,

SEPCO paid Enercorp, but Enercorp never paid Shapiro his share.  (Id. ¶¶ 71, 73.)

Similarly, Shapiro maintains that Enercorp never provided the assignment relating

to the overrides that he was owed.  (Id. ¶ 74.)  Shapiro alleges that Enercorp has

not only breached the Collaboration Agreement, but also that Enercorp never

intended to comply with it in the first place.  (Id. ¶¶ 75–76.)  Additionally, Shapiro

claims that Bruce Gates ("Gates"), Thomas E. Turner, and Jack Gunther

("Gunther") conspired together to defraud Shapiro by withholding money due

under the Collaboration Agreement and providing him with false information.  (Id.

¶ 77.)

       Originally, Enercorp filed suit in state court ("the Enercorp

Complaint") on November 19, 2012, against Shapiro.  (Dkt. # 1-2.)  On December

31, 2012, Shapiro removed the case to federal court.  (Dkt. # 1.)  On February 11, 2013, Shapiro filed a motion to dismiss the Enercorp Complaint.  (Dkt. # 16.) After the parties submitted responses and replies, the Court heard argument on the motion to dismiss, granted the motion in part, denied the motion in part, and granted Enercorp leave to amend.  (Dkt. # 37.)

Shortly thereafter, Shapiro filed a third-party complaint ("the Shapiro Complaint") against Gates, Gunther, Christopher Dedmon ("Dedmon"), SDC Montana Consulting, LLC, and SDC Montana, LLC and also asserted counter-claims against Enercorp.  ("Compl.," Dkt. # 40.)  Summonses were issued for Gates, Gunther, Dedmon, SDC Montana Consulting, LLC, and SDC Montana, LLC on September 30, 2013.  (Dkt. # 42.)  The deadline for the Third Party Defendants to respond was October 30, 2013.  Gates and Gunther each timely answered and moved to dismiss the complaint. (Dkt. # 46–49.)  On November 4, 2013, Shapiro attempted to serve summonses on Christopher Dedmon, SDC Montana, LLC, and SDC Montana Consulting, LLC (the "Dedmon Entities") for the second time.  (Dkt. ## 52–54.)  That same day, Shapiro filed a Motion for Entry of Default against Gates, Gunther, and the Dedmon Entities.[2]  (Dkt. # 55.)

_____

[2] On November 5, 2013, Gates and Gunther filed an advisory to the Court requesting that the Court interpret the inclusion of Mr. Gates and Mr. Gunther in the motion for default as a scrivener's error because Gates and Gunther had filed timely motions.  (Dkt. # 58.)  Because of Gates and Gunther's timely motions, the Court will only consider the Motion for Default as it pertains to the Dedmon

On November 18, 2013, the Dedmon Entities moved to quash the attempted

service of process upon them and, in the alternative, sought an order dismissing the

cause of action alleged against them for failure to state a claim.  (Dkt. # 65.)

## LEGAL STANDARD

I.    Service of Process

Federal Rule of Civil Procedure 12(b)(5) allows a court to dismiss a

claim for "insufficient service of process."  Fed. R. Civ. P. 12(b)(5).  If service of

process is challenged, the party responsible for serving has the burden to show that

service was valid.  Sys. Signs Supplies v. Dep't of Justice, 903 F.2d 1011, 1013

(5th Cir. 1990).  The Federal Rules of Civil Procedure distinguish between service

of process for individuals and service of process for corporations.

A.    Service of Process for Individuals

Service of process for individuals is covered by Federal Rule of Civil

Procedure 4(e).  A plaintiff may serve an individual in a judicial district of the

United States (1) by delivering a copy of the summons and complaint to the

individual personally; (2) by leaving a copy of the summons and complaint at the

individual's dwelling or usual place of abode with someone of suitable age and

discretion who resides there; or (3) by delivering a copy of the summons or

---

Entities.  Additionally, Gunther is no longer a party to this lawsuit as the Court
terminated all claims against him on April 15, 2014.  (Dkt. # 80.)

complaint to an agent authorized by appointment or by law to receive service of process.  Fed. R. Civ. P. 4(e)(2)(A)–(C).

Additionally, an individual may be served pursuant to the law of the state where the district court is located or the state where service is made.  Fed. R. Civ. P. 4(e)(1).  Under Texas Rule of Civil Procedure 106(a) service of process may be effected (1) by delivering a copy of the complaint and summons to the individual in person or (2) by mailing the service documents to the defendant by certified mail, return receipt requested.  Tex. R. Civ. P. 106(a)(1)–(2).  If the serving party files a motion supported by an affidavit that either of the two aforementioned methods are unsuccessful, the court may authorize service by:

1) leaving a copy of the citation and petition with anyone over the age of sixteen at the location specified in the affidavit; or

2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

Tex. R. Civ. P. 106(b)(1)–(2).

B.    <u>Service of Process for Business Entities</u>

Service of process for corporations, partnerships, and associations located in the United States is governed by Federal Rule of Civil Procedure 4(h). The Rule provides that a business entity must be served either:

1) according to the law of the state in which the court is located; or

2) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and —if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1)(A)–(B).  The Texas Business and Organizations Code authorizes a business entity's registered agent, president, or vice president to be served on behalf of the business entity.  Tex. Bus. Orgs. Code § 5.255.

The "serving party bears the burden of proving the validity of service or good cause for failure to effect timely service."  Holly v. Metro. Transit Auth., 213 F. App'x 343, 344-45 (5th Cir. 2007) (citing Carimi v. Royal Carribean Cruise Line, Inc., 959 F.2d 1344, 1346 (5th Cir.1992)); Sys. Signs Supplies v. U.S. Dep't of Justice, Washington, D.C., 903 F.2d 1011, 1013 (5th Cir. 1990) (citing Winters v. Teledyne Movible Offshore, Inc., 776 F.2d 1304, 1305 (5th Cir.1985); Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc., 635 F.2d 434, 435 (5th Cir.1981)); Lisson v. ING GROEP N.V., 262 F. App'x 567, 569 (5th Cir. 2007).

II.     Motion to Dismiss

   A proper pleading under the Federal Rules of Civil Procedure must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

   In reviewing a motion to dismiss, the Court accepts as true all of the well-pleaded factual allegations in the complaint. See id. at 678.

   In order to survive a motion to dismiss, a claim must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677.

   In adjudicating a motion to dismiss, the Court considers only the pleadings and those matters of which it may take judicial notice under Rule 201 of the Federal Rules of Evidence. Lovelace v. Software Spectrum Inc., 78 F.3d 1015,

11

1018–19 (5th Cir. 1996) (adopting a rule that a court in a securities fraud action
may take judicial notice of relevant public disclosure documents required to be
filed with the SEC); <u>Hurd v. BAC Home Loans Servicing, LP</u>, 880 F.Supp. 2d 747,
758 (N.D. Tex. 2012) (taking judicial notice of matters of public record and
considering documents attached to a motion to dismiss as part of the pleadings
because they were central to the claims in the complaint).

Additionally, when a party alleges fraud, the complaint must meet the
heightened pleading standards set forth in Federal Rule of Civil Procedure 9(b).
Rule 9(b) requires that a party pleading fraud or mistake "must state with
particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

III.   <u>Motion to Amend</u>

Under Rule 15(a) of the Federal Rules of Civil Procedure, "if the
pleading is one to which a responsive pleading is required, [a party may amend
within] 21 days after service of a responsive pleading or 21 days after service of a
motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P.
15(a)(1)(B).  "In all other cases, a party may amend its pleading only with the
opposing party's written consent or the court's leave.  The court should freely give
leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

In considering whether to grant or deny leave to amend, the court
"may consider such factors as undue delay, bad faith or dilatory motive on the part

12

of the movant, . . . undue prejudice to the opposing party, and futility of amendment." In re Southmark Corp., 88 F.3d 311, 314–15 (5th Cir. 1996); see also Jones v. Robinson Prop. Grp. L.P., 427 F.3d 987, 994 (5th Cir. 2005).

DISCUSSION

I.      The October 9, 2013 Service of Process

      As a preliminary matter, the Court will address the validity of the October 9, 2013 service of process by Shapiro on the Dedmon Entities.

      The Clerk of this Court issued summonses on September 30, 2013, for the Dedmon entities.  (Dkt. # 42.)  Subsequently, on November 4, 2013, Shapiro filed three Proofs of Service signed by Andrew C. Manager, IV.   (Dkt. ## 52–54.)  Andrew Manager stated in the Proofs of Service that on October 9, 2013, he served Sylvia Suttles "who was authorized to accept service" on behalf of the Dedmon Entities and who did, in fact, accept service on their behalf.  (Id.)

      The October 9, 2013 attempted service was insufficient.  Service on Christopher Dedmon failed because none of Federal Rule 4(e) or Texas Rule 106(a) requirements were met.  Shapiro did not personally serve Dedmon, did not leave a copy of the summons and complaint at his dwelling or usual place of abode, did not provide a copy of the summons and complaint to a person authorized by law to act as an agent for service of process, and did not properly

13

mail Dedmon the summons and complaint.  See Fed. R. Civ. P. 4(e)(1)–(2); Tex.

R. Civ. P. 106(a).

Similarly, Shapiro failed to serve SDC Montana Consulting, LLC and

SDC Montana, LLC.  Both Texas and Federal Rules require that plaintiffs

attempting to serve a business entity must serve individuals who are authorized to

accept service of process on behalf of the entity.  See Fed. R. Civ. P. 4(h)(1); Tex.

Bus. Orgs. Code § 5.255.  Under the Federal Rules, service of process on a

business entity must be made upon an officer, a managing or general agent, or any

other agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(h)(1).  Similarly, Texas allows service of process on a business

entity's registered agent, president, or vice president.  Allison v. Raytheon, 4:10-

CV-438, 2010 WL 5535808,*2 (E.D. Tex. Dec. 17, 2010); Tex. Bus. Orgs. Code

§§ 5.201, 5.255(1).  Sylvia Suttles was not authorized to accept service of process

on behalf of the Dedmon Entities because she is not a registered agent or officer of

the entities.

Shapiro's argument that Sylvia Suttles was capable of accepting

service on behalf of the Defendants must also fail.  In Lisson v. ING GROEP N.V.,

the Fifth Circuit resolved the issue of whether service must always be made on an

authorized agent.  262 Fed. Appx. 567, 569 (5th Cir. 2007) (per curiam).  The court

recognized that some jurisdictions required service on an authorized agent, while

other jurisdictions required only that the person served know how to handle the summons and complaint so that the defendant would be provided notice of pending claims.  Id.  The Fifth Circuit followed the reasoning of the former jurisdictions and held that an "an individual sought to be served must have actually authorized another to accept service of process on the would-be principal's behalf…delivery to a purported agent does not constitute service on the would be principal, even if the 'agent' represents himself to be so authorized or accepts service."  Id.  (citing O'Meara v. New Orleans Legal Assistance Corp., No. 91-4893, 1991 WL 110401, at *3-4 (E.D. La. June 10, 1991)).  Therefore, even if Sylvia Suttles represented herself as authorized to accept service, the Court must find that proper service could not be achieve through her because she was not actually authorized to accept service.  Therefore, the Court finds that the October 9, 2013 attempted service was improper and ineffective.

II.     The Motion for Default

        On November 11, 2013, Shapiro moved for an Entry of Default against Third-Party Defendants, the Dedmon Entities.  (Dkt. # 55.)  Shapiro alleged that the Dedmon Entities did not timely file a response to the fourth cause of action in the Shapiro Complaint—Fraudulent Inducement.  (Id. ¶ 5.)  Shapiro argues that he properly served Dedmon, SDC Montana Consulting, LLC, and SDC Montana, LLC by leaving a copy of the Shapiro Complaint with Sylvia Suttles on

15

October 9, 2013.  (Id. ¶ 4.)  Shapiro argues that because the Dedmon entities did

not respond within twenty-one days, an entry of default is warranted.  (Id. ¶ 11.)

Until the plaintiff serves the defendant, the defendant has no duty to

answer the complaint and the plaintiff cannot obtain a default judgment.  Rogers v.

Hartford Life & Acc. Ins. Co., 167 F.3d 933, 937 (5th Cir. 1999); see also

Broadcast Music, Inc. v. M.T.S. Enter., Inc., 811 F.2d 278, 282 (5th Cir.1987)

("No person need defend an action nor suffer judgment against him unless he has

been served with process and properly brought before the court.").

Because the Court has found that service of process on October 9,

2013 was improper, the Dedmon Entities were under no duty to answer as of

October 30, 2013, and therefore, the Court **DENIES** Shapiro's request for an entry

of default.

III.    The Motion to Dismiss

On November 18, 2013, the Dedmon Entities moved to dismiss the

complaint because of insufficient service of process and, in the alternative, to

dismiss the claim against them for failure to state a claim.  (Dkt. # 65.)

A.    Insufficient Service of Process

As discussed above, the Court finds that the October 9, 2013 service

of process was insufficient.  However, on January 22, 2014 all three Defendants

were properly served.  (Dkts. # 68–70.)  Plaintiffs filed Proofs of Service stating

16

that Melissa Lee served Christopher Dedmon in his personal capacity (Dkt. # 68)

and in his capacity designated by law to accept service of process on behalf of

SDC Montana Consulting, LLC (Dkt. # 69) and SDC Montana, LLC (Dkt. # 70).

Christopher Dedmon is President of the SDC entities, a position that characterizes

him as an agent for service of process under both Texas and Federal law.  See Tex.

Bus. Orgs. Code §5.255(1); Fed. R. Civ. P. 4(h)(1). Therefore, Dedmon's

acceptance of service individually and as an agent for the two business entities

renders the motion for insufficient service of process **MOOT**.

      B.    <u>Failure to State a Claim</u>

      The Dedmon Entities have moved to dismiss the Shapiro Complaint

for failure to state a claim pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules

of Civil Procedure.  In the Shapiro Complaint, the only cause of action asserted

against the Dedmon Entities is for Fraudulent Inducement.  (Dkt. # 40 ¶¶ 116–

131.)  The Dedmon Entities argue that Shapiro has failed to plead any

"particularized allegations of any act or omission" that they had undertaken "that

would give rise to a fraud claim against them."  (Dkt. # 65 ¶ 2.)

      In response, Shapiro argues first that the Motion to Dismiss is

untimely.  (Dkt. # 66 at 2–3.)  However, the Court has already found that the

Dedmon Entities were served on January 22, 2014.  The Dedmon Entities Motion

to Dismiss was filed in November 2013, before they were even served, once they

learned that the Shapiro Complaint had been filed.  Therefore, this contention is rejected.

Shapiro next argues that it has properly pled a claim for fraudulent inducement against the Dedmon Entities.  (Id. at 6–9.)  Shapiro asserts that his complaint stated that the Dedmon Entities made misrepresentations to Shapiro to induce him to sign the Collaboration Agreement, including (1) that the Dedmon Entities falsely represented that Shapiro would be paid for its ownership interests in the Bakken Play; and (2) that the Dedmon Entities falsely represented to Shapiro that SEPCO would only deal with Enercorp.  (Id. ¶¶ 118–19, 123.)

As discussed above, when faced with a motion to dismiss, a party claiming fraud must plead sufficient facts to make the claim plausible on its face. See Twombly, 550 U.S. at 570; Castillo v. Hernandez, EP-10-CV-247-KC, 2011 WL 2489910 (W.D. Tex. June 17, 2011).  To establish a claim for fraud, a plaintiff must show: (1) that the defendant made a material false representation; (2) that was known to be false or made without knowledge of the truth at the time of its making; (3) intended that it be relied and acted upon; and (4) that it caused injury through reliance.  Malacara v. Garber, 353 F.3d 393, 403–04 (5th Cir.2003) (citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 322 (5th Cir.2002); Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 47 (Tex.1998)).  "Fraudulent inducement is a particular species of

fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof.  In a fraudulent inducement claim the elements of fraud must be established as they relate to an agreement between the parties." LeTourneau Tech. Drilling Sys. v. Nomac Drilling, LLC, 676 F. Supp. 2d 534, 542 (S.D. Tex. 2009) (internal citations and quotation marks omitted).

Additionally, a party alleging a cause of action sounding in fraud must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  A party alleging fraud "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9.

The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  McCrimmon v. Wells Fargo Bank, N.A., 516 F. App'x 372, 375 (5th Cir. 2013) (quoting Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp., 565 F.3d 200, 207 (5th Cir.2009) (internal quotation marks omitted)).  The Fifth Circuit instructs courts "to apply Rule 9(b) to fraud complaints with 'bite' and 'without apology.'"  Id.  (quoting Williams, 112 F.3d at 178.); see also Scott v. Bank of Am., N.A., SA-12-CV-00917-DAE, 2013 WL 1821874 (W.D. Tex. Apr. 29, 2013.  The Fifth Circuit explained that "Rule9(b) has long played [a]

screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later."  U.S. ex rel. Grubbs, 565 F.3d at 186.

Here, the Shapiro's cause of action for fraudulent inducement details a number of representations allegedly made to Shapiro.  (Dkt. # 40 ¶¶ 116–131.) Shapiro states the Dedmon Entities represented (1) "that Shapiro would be paid for its ownership interests in mineral rights in the Bakken Play on a per acre basis" (Id. ¶ 119); (2) "that Shapiro would be paid for his interest in mineral rights through the Collaboration Agreement if Shapiro assigned all of his mineral rights to [Enercorp]" (Id. ¶ 120); (3) "that Shapiro would receive overriding royalties for the mineral acreage in the Bakken Play" (Id. ¶121); (4) "that Shapiro would receive carried working interest for the mineral acreage in the Bakken Play" (Id. ¶ 122); (4) "that SEPCO only wanted to deal with [Enercorp]" (Id. ¶123); and (5) "that [the Dedmon Entities] would comply with the terms of the Collaboration Agreement" (Id. ¶124.  Of these representations, Shapiro only explicitly states that the representations that Shapiro would be paid on a per acre basis for his mineral rights in the Bakken Play (the "mineral rights representation") (Id. ¶ 119) and the representation that SEPCO would only deal with Enercorp (the "SEPCO representation") (Id. ¶ 123) were misrepresentations.[3]

---

[3] Shapiro alleges that the Enercorp, Gates, and the Dedmon Entities made representations that it would comply with the Collaboration Agreement.  (Dkt. # 40 ¶ 124.) Shapiro then alleges that Enercorp had no intention of complying with the

However, even for these two alleged misrepresentations, Shapiro has not sufficiently pled these claims to satisfy the heightened pleading standard of Rule 9(b).

First, as the mineral rights representation, Shapiro pleads that "upon information and belief" the Dedmon Entities "never intended on paying Shapiro for his ownership rights[,] but instead intended on suing him with his own money." (Id. ¶ 119.)  Second, as to the SEPCO representation, Shapiro only adds that "upon information and belief, SEPCO made no such request and [the Dedmon Entities] made those representations to insulate their conduct from Shapiro and to hide funds from Shapiro."  (Id. ¶ 123.)  However, earlier in the Shapiro Complaint, he averred that Enercorp was the party that made this representation.  (Id. ¶ 62.) Shapiro stated, "[Enercorp] took this opportunity to claim SEPCO wanted to only deal with them in the negotiations going forward and they needed to be at the forefront of any agreements with SEPCO."  (Id.)  Nowhere in Shapiro's rendition of the facts does he state that the Dedmon Entities were responsible for this representation.[4]  The only other detail Shapiro provides with respect to either

---

Collaboration Agreement.  (Id.)  However, Shapiro does not allege that the Dedmon Entities entered the agreement without the intention of complying with it. Additionally, although Shapiro lists many representations made by the Dedmon Entities, nowhere does he allege that these were false.

[4] Moreover, Shapiro claims that it relied only on Enercorp's representations to enter into the Collaboration Agreement:  "In other words, Shapiro agreed to the terms [of the Collaboration Agreement] solely based on the representations of

allegation is that "[t]hese representations were made between April 1, 2012 and September 26, 2013 and were made either orally or by email."  (Id. ¶ 125.)

The Court finds that Shapiro failed to allege with sufficient particularity the circumstances constituting the fraudulent inducement as required by Federal Rule of Civil Procedure 9(b).  Shapiro fails to identify who specifically made these representations, where the representations were made, or why or how the statements were fraudulent. Shapiro's allegations that Enercorp, Gates, SDC, and Dedmon "represented" certain fraudulent inducements fail to identify what specific statements were made in the representation, who made each of these representations, how each representation was made, and when each representation was made.  Shapiro cannot even narrow the timeframe in which these statements were made to smaller than an eighteen-month window.  The pleading does not explain whether these representations to Shapiro were made independently of one another, at the same time, at the same place, or in the same method of communication.

Therefore, the Court finds that the claim for fraudulent inducement as alleged against the Dedmon Entities must be **DISMISSED WITHOUT PREJUDICE** for failure to meet the heightened pleading requirement of Rule 9(b).

---

[Enercorp] that Shapiro would receive funds immediately upon receipt by [Enercorp] from SEPCO."  (Dkt. # 40 ¶66.)

IV.    <u>Motion to Amend</u>

At the hearing, Shapiro requested leave to amend its complaint (Dkt. # 40.)  The Court finds that there has been no undue delay, bad faith, or dilatory motive on the part of Shapiro and that allowing Shapiro to amend will not unduly prejudice any of the opposing parties in this litigation.  Therefore, the Court **GRANTS** Shapiro leave to amend the Shapiro Complaint.  The Court notes that Enercorp and Gates have filed a Motion for Partial Summary Judgment (Dkt. # 87) on certain of Shapiro's claims contained in the Shapiro Complaint.  Because the Court has granted Shapiro's request for leave to amend, the Motion for Partial Summary Judgment is now **MOOT**.

CONCLUSION

For the reasons stated above, the Court **DENIES** Shapiro's Request for Entry of Default (Dkt. # 55), **DENIES AS MOOT IN PART AND GRANTS IN PART** the Dedmon Entities' Motion to Dismiss for Insufficient Service of Process and Motion to Dismiss the Fourth Cause of Action in the Shapiro Complaint for Failure to State a Claim (Dkt. # 65), **GRANTS** Shapiro leave to amend his complaint, and **MOOTS** Enercorp and Gates' Motion for Summary Judgment (Dkt. # 87).

IT IS SO ORDERED.

DATED:  San Antonio, Texas, July 10, 2014.

_____

David Alan Ezra
Senior United States Distict Judge

24